UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EUSTACIO SALAZAR-MARTINEZ, on behalf of
himself and all other similarly situated
persons,

                           Plaintiffs,              10-CV-6257

              v.                                    **ORDER**

FOWLER BROTHERS, INC., JOHN FOWLER,
ROBERT FOWLER, JOHN D. FOWLER and
AUSTIN FOWLER

                           Defendants.
_____

<u>**INTRODUCTION**</u>

     Plaintiff, Eustacio Salazar-Martinez ("Plaintiff"), brings

this action for declaratory relief and monetary damages on behalf

of himself and all other similarly situated employees of Defendant,

Fowler Brothers, Inc[1]. ("Fowler"), alleging violations of the Fair

Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

("FLSA"), New York State Labor Laws, N.Y. Lab. Law §§ 191, 193,

198, 198-b and  681 (McKinney 2011), New York's Minimum Wage Order

for Farm Workers, N.Y. Comp. Codes R. & Regs. tit. 12, §§ 190-1.2,

190-2.1 and 190-5.1 (2009), and breach of contract.  Specifically,

Plaintiff alleges that between 2003 and 2010  Defendants failed to

reimburse him and other migrant farm workers, employed by

Defendants through the H-2A guest worker visa program, for their

pre-employment travel, visa and recruitment expenses, and that

_____

     [1]Defendants John Fowler, Robert Fowler, John D. Fowler and Austin Fowler are the
owners and operators of Fowler Brothers, Inc. <u>See</u> Compl. ¶13.

these expenses were "kickbacks" under the state and federal wage laws that reduced Plaintiff's compensation in the first work-week below the minimum wage.

Prior to answering the Complaint, Defendants moved for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), arguing that the expenses alleged to have been borne by Plaintiff are not, as a matter of law, required to be reimbursed by Defendants and that, even if such expenses are required to be reimbursed, Defendants paid Plaintiff the applicable minimum wage in the first work-week.  Defendants also move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") to dismiss Plaintiff's claims for the years 2003-2007 and 2010 for lack of subject matter jurisdiction, as Plaintiff only worked for Defendants in the years 2008 and 2009, and because Fowler did not participate in the H-2A program from 2003-2005. Lastly, Defendants also move to dismiss Plaintiff's claim for declaratory relief for lack of subject matter jurisdiction.

Plaintiff opposes Defendants' motion, arguing that the alleged pre-employment expenses are reimbursable to the extent that Plaintiff's payment of such expenses reduced his first week's pay below the applicable minimum wage.  Plaintiff further argues that the inclusion of class members from years in which Plaintiff was not employed by Defendants should be decided on a motion for class certification, as it is a question of whether such employees are

2

"similarly situated" to the Plaintiff and therefore, whether he can properly represent them in a collective action law suit.   He further argues that this Court has subject matter jurisdiction with respect to his claim for declaratory relief.

There is little authority in this Circuit on the issue of whether the pre-employment travel and visa expenses of H-2A workers are required to be reimbursed under federal and state wage laws. The Fifth and Eleventh Circuits are split on the issue, and the Department of Labor ("DOL") recently questioned its longstanding position that such expenses are required to be reimbursed. Ultimately, the DOL reaffirmed its position, citing, in part, the reasoning of the Eleventh Circuit in Arriaga v. Florida Pacific Farms, LLC., 305 F3d 1228 (11th Cir. 2002). See U.S. Dep't. of Lab., Wage and Hour Div., Field Assistance Bulletin No. 2009-2 ("Bulletin No. 2009-2").   For the reasons set forth below, this Court finds persuasive the 11th Circuit's reasoning in Arriaga and the most recent pronouncements of the DOL, as well as the dissent in the Fifth Circuit's decision in Castellano-Contreras v. Decatur Hotels, LLC, 622 F.3d 393 (5th Circuit 2010)(en banc)(8-6 decision)(Dennis, J., dissenting). See also Teoba v. Trugreen Landcare LLC, 2011 WL 573572 (W.D.N.Y. 2011)(Siragusa, J.)(similarly holding that such expenses are reimbursable, following the reasoning of the most recent DOL interpretations, the Eleventh Circuit in Arriaga and the dissent in Decatur Hotels).

Accordingly, this Court denies Defendants' Motion for Summary Judgment, and grants in part and denies in part Defendants' Motion to Dismiss. The parties have also filed discovery motions that this Court finds are now moot based on this Decision and Order.[2] Accordingly, Defendants' Motion for a Protective Order and Plaintiff's Cross Motion to Compel Discovery are denied as moot. The parties are directed to consult the Local Rules of Civil Procedure and conduct discovery accordingly.

## BACKGROUND

Plaintiff, a Mexican citizen, was employed by Defendants as an apple harvester in 2008 and 2009 under the H-2A visa program, which allows employers in the United States to hire foreign agricultural workers for a limited time, after complying with the regulations promulgated by the Secretary of the DOL . See 20 C.F.R. 655.100 et seq.; (Martinez Dec. ¶ 14.) Plaintiff had worked for other H-2A employers prior to working for Fowler and, in order to navigate the complicated H-2A visa application process in those years and in the years he worked for Fowler, Plaintiff utilized the services of Angelica Maria Nava Piña ("Nava Piña"). (Martinez Dec.

---

[2] On October 18, 2010, Defendants filed a Motion for a Protective Order, seeking to postpone discovery until this Court decided the merits of the instant Motion for Summary Judgement. (Docket #26.) Plaintiff responded, by opposing Defendants' motion, filing a Cross-Motion to Compel Discovery and arguing pursuant to Rule 56(f), that this Court should not decide the merits of the instant Motion for Summary Judgement until further discovery is conducted with respect to the relationship between the Defendants and the alleged recruiter in Mexico, and the sums paid by the Plaintiff to the recruiter, to determine whether any of such sums are reimbursable under the applicable federal and state wage laws. (Docket #32.)

¶ 4, 14.)  Nava Piña owns and operates a travel agency, Navpisa Viajes, in Rio Verde, San Luis Potosí, Mexico, that assists Mexican citizens and American H-2A and H-2B[3] employers with the process of recruiting and completing the visa application process. (Nava Piña Dec. ¶ 2-3.)

For her services, Nava Piña charges her Mexican clients a single lump-sum fee that includes visa processing fees payable to the U.S. Government and to the company that conducts the visa interviews on behalf of the U.S. Consulate in Mexico, round trip transportation from their point of origin and expenses incurred by Nava Piña in traveling to the prospective worker's point of origin to assist the worker in completing the visa application. (Nava Piña Dec. ¶ 5.) Nava Piña stated that her fee for 2008 was 4,000 pesos (approximately $400 U.S. dollars in August 2008[4]) and for 2009 it was $500 U.S. dollars. Id. Plaintiff, however, stated that he paid Nava Piña $500 U.S. dollars in both 2008 and 2009.  (Martinez Dec. ¶ 17.)

Nava Piña stated that in 2008 Defendants contacted her with a list of employees they sought to hire through the H-2A program. (Nava Piña Dec. ¶ 6.)  She contacted these workers and also informed Plaintiff about the opportunity. Id.  Plaintiff stated

---

[3]The H-2B visa program is similar to the H-2A visa program for nonprofessional, nonagricultural temporary foreign workers. 20 C.F.R. § 655.1 *et seq.*

[4]See http://newyorkfed.org/markets/fxrates/historical/fx.cfm.  The Exchange rate for the Mexican Peso was approximately 10 pesos/dollar in August 2008.

that Nava Piña offered him the job and instructed him to give her $500 U.S. dollars, which he understood to be a visa processing fee. (Martinez Dec. ¶ 17.)   The same process occurred in 2009. Id.; (Nava Piña Dec. ¶ 7.)

For her services to Fowler, Nava Piña charged Fowler $150 U.S. dollars per worker. (Nava Piña Dec. ¶ 11).  Nava Piña also paid for a bus to transport the workers from Mexico to the Fowler farm in Wolcott, New York and was reimbursed for this cost ($210/worker in 2008 and $255/worker in 2009) by Fowler.  (Nava Piña Dec. ¶ 8-9); Def. Brief. at 24, Docket #17-5.

Plaintiff alleges that Nava Piña acts as an agent to Fowler in Mexico for the purpose of recruiting seasonal labor, and that he paid Nava Piña the fees described above "in order to secure an offer of employment with one or more of the Fowler defendants." Compl. ¶54-60.  He further states that the fees were paid as "a condition of being considered for any position of employment as an H-2A worker for one or more of the Fowler defendants." Id.

During his first work-week for Fowler in 2008, Plaintiff worked 33 hours at a rate of $9.70 per hour ($320.10) and was also paid $19.80 in meal reimbursements for his travel from Mexico and $70.00 in a "visa-related" reimbursement. See Def. Local Rule 56.1 Statement at ¶3-4.  Plaintiff was also reimbursed an additional $80.00 in visa-related expenses at the end of the 2008 work season. Id. at ¶4. During the first work-week in 2009, Plaintiff worked 16

hours at a rate of $9.70 per hour ($155.00). He was paid $24.75 for meal reimbursements and he was reimbursed for visa-related expenses in the same manner as in 2008 ($70 in the first week and $80.00 at the end of the season). Id. at ¶5-6.  Plaintiff was not reimbursed for any other pre-employment expenses paid by the Plaintiff to Nava Piña or for miscellaneous travel and subsistence costs incurred during the visa application process or his travel to the United States.

<u>**DISCUSSION**</u>

I.   <u>**Defendants' Motions to Dismiss**</u>

   A. Alleged Violations in 2003 through 2007 and 2010

   Defendants move to dismiss Plaintiff's claims for the years 2003 through 2007 and 2010 for lack of subject matter jurisdiction. Defendants argue that they did not participate in the H-2A program at all for the years 2003-2005 (Fowler Dec. at ¶3, 5) and, because Plaintiff was employed by Defendants in 2008 and 2009 only, he does not have standing to assert claims that relate to alleged violations in 2006, 2007 and 2010.  Defendants do not contest that Plaintiff has standing to pursue his claims for the years 2008 and 2009.

   Plaintiff argues that the allegations in the Complaint relating to the years 2003-2007 and 2010 represent the potential claims of the class of H-2A workers he seeks to represent. Accordingly, he argues that, because he has standing to pursue his

own claims for 2008 and 2009, his ability to represent workers who were employed in years prior and subsequent to his own employment is best resolved by a motion for class certification.  On such a motion, Plaintiff argues, the issue under the FLSA collective action statute would be whether such employees are "similarly situated" and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, whether Plaintiff and the putative class members satisfy the "commonality" and "typicality" requirements of Rule 23.  This Court agrees.

While this Court recognizes that a representative plaintiff must have individual standing in order to assert claims on behalf of a class, the fact that Plaintiff seeks to represent a class of individuals whose claims may have accrued at different times is an issue of "typicality" and is more properly addressed in connection with Plaintiff's pending motion for conditional class certification. See <u>Defer v. Raymond James Financial, Inc.</u>, 654 F.Supp.2d 204, 210 (S.D.N.Y. 2009)("As a threshold matter, defendants contend that plaintiff does not have standing to represent a class of all individuals who purchased any [stock] from defendants, but may assert only claims relating to the specific securities that she purchased.  Whether plaintiff can represent class members is not a question of standing, however. The issue goes to the typicality of plaintiff's claims as representative of those of other alleged Class members. There is no dispute that

8

plaintiff has standing to bring securities fraud claims arising out of her own purchase of [stock] from defendants. The typicality question is addressed more properly on a motion for class certification.") (internal citations omitted). <u>See also Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 244 F.Supp.2d 289, 335 (S.D.N.Y. 2003) ("To the extent that [defendant] is arguing that the named plaintiffs were injured at different times than other members of the class, the question is one of typicality which should be raised when plaintiffs seek to have the class certified.").

Accordingly, this Court will address the issue of whether a class should be conditionally certified, and the potential scope of that class, in its consideration of Plaintiff's pending motion for class certification. However, to the extent Plaintiff seeks to represent a class of putative plaintiffs who allegedly worked for Fowler in the years 2003-2005, these claims must be dismissed, as Fowler did not participate in the H-2A program in those years and therefore, claims by employees during those years could not be typical to those of the Plaintiff, who is specifically asserting claims based on his status as an H-2A employee. Therefore, Defendants' Motion to Dismiss any claims that allegedly accrued in the years 2003, 2004 and 2005 is granted, and their Motion to Dismiss claims which allegedly accrued in the years 2006, 2007 and 2010 is denied.

B. Declaratory Relief

Defendants also seek to dismiss Plaintiff's claim for declaratory relief for lack of subject matter jurisdiction. See Def. Brief at 12 (Docket #17-5). This Court's jurisdiction under the Declaratory Judgment Act is limited by the "cases" and "controversies" requirement of Article III of the Constitution. See Summers v. Earth Island Institute, 129 S.Ct. 1142 (2009). "A federal court may only be called upon 'to adjudge the legal rights of litigants in actual controversies,'accordingly, a necessary prerequisite to the exercise of judicial power is the presence of a 'claim of substantive right' that triggers the adjudicative function of the court." See S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange Inc., 24 F.3d 427, 431 (2d Cir. 1994) (internal citations omitted). A demand for declaratory relief does not, by itself, create the requisite controversy required for this Court to exercise jurisdiction. Thus, "where the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed." Id.

> Federal courts are not reluctant to grant declaratory relief, but must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions,...[particularly] where a ruling is sought that would reach far beyond the particular case. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them. Where the relief sought would not resolve the entire case or

10

> controversy as to any [party]..., but would merely
> determine a collateral legal issue governing certain
> aspects of... pending or future suits, a declaratory
> judgment action falls outside the constitutional
> definition of a 'case' in Article III.

See Jenkins v. U.S., 386 F.3d 415, 417-18 (2d Cir. 2004)(internal citations and quotations omitted).

Plaintiff in this case alleges that Defendants violated the provisions of the FLSA, various New York State wage laws and his H-2A employment contract by failing to reimburse him for certain pre-employment expenses.  He further alleges that his payment of these expenses amounts to a "kickback," which effectively reduced his first week's pay in 2008 and 2009 below the applicable state and federal minimum wage.  Accordingly, he seeks monetary damages and a declaration that the Defendants' practice of failing to reimburse H-2A employees for such expenses is a violation of the FLSA and New York State wage laws and his own H-2A contract.

This Court finds that Plaintiff has alleged an actual controversy that may properly be decided by this Court.  Further, Plaintiff's claims are such that a declaration of the parties' respective legal rights under the H-2A visa program will serve to resolve the controversy and redress the alleged injury. Defendants' argument that Plaintiff's claim for damages precludes his claim for declaratory relief is similarly unavailing, as a plaintiff may seek declaratory relief as a cumulative or alternative remedy. See Advisory Committee Note to 1973 Adoption

to Fed. R. Civ. P. 57. Accordingly, this Court finds that Plaintiff has properly asserted a claim for declaratory relief and therefore, Defendants' Motion to Dismiss this claim is denied.

## II.  **Defendants' Motion for Summary Judgment**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. See Anderson, 477 U.S. at 255; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Further, pursuant to Rule 56(d)(formerly rule 56(f)):

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or(3) issue any other appropriate order.

The grant of relief pursuant to Rule 56(d) is within the discretion of the district court. See U.S. v. Private Sanitation Industry

<u>Association of Nassau/Suffolk, Inc.</u>, 995 F.2d 375 (2d Cir. 1993).

A.   <u>FLSA Claims: The H-2A Program and Pre-Employment Visa,
     Travel and Recruitment Expenses</u>

Under the H-2A visa program, an employer who seeks to hire temporary foreign agricultural workers must first apply for certification from the DOL. <u>See</u> 20 C.F.R. § 655.100. The employer must certify that there are not sufficient workers in the United States to fill the positions, and that the employment of foreign workers will not "adversely affect the wages and working conditions of workers in the U.S. similarly employed." <u>Id</u>. To comply with this condition, the employer must "pay the worker at least the [Adverse Effect Wage Rate ("AEWR")], the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest." <u>See</u> 20 C.F.R. § 655.122(l). In 2008 and 2009 the AEWR was $9.70 per hour, which was the highest wage rate under §655.122(l). Accordingly, Defendants offered to pay prospective H-2A employees $9.70 per hour, pursuant to their applications to the DOL and the prospective employees' H-2A employment contracts. Compl. ¶¶ 51-2 and Exhibits (Docket #1).

Under the regulations, an employer may make <u>reasonable</u> deductions, for example, any deductions required by law, and deductions for daily transportation or food, from the employee's paycheck (or include such items in the calculation of the

employee's wage). <u>See</u> 20 C.F.R. § 655.122(p).   However, "[a] deduction that is primarily for the benefit or convenience of the employer will not be recognized as reasonable and therefore the cost of such an item may not be included in computing wages." <u>Id</u>. Further, an employer may not make deductions that would violate the FLSA. <u>Id</u>.

Under the FLSA, in calculating the applicable minimum wage, the wage paid to an employee may include the reasonable cost of "furnishing the employee with board, lodging, or <u>other facilities</u>, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." <u>See</u> 29 U.S.C. § 203(m).   However, if the "other facilities" are found to be "primarily for the benefit or convenience of the employer," they will not be considered "reasonable" and therefore, they may not be included in computing wages under the FLSA.[5] <u>See</u> 29 C.F.R. § 531.3(d)(1). The following are examples of "other facilities" that the DOL has determined are primarily for the benefit of the employer: "(i)Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of

---

[5]Under the FLSA, there is no legal difference between a deduction from an employee's paycheck and requiring the employee to bear the expense of the item directly out of his own wages, as wages are required to be paid "free and clear." <u>See</u> 29 C.F.R. § 531.35.  Accordingly, if an expense is deducted from an employees paycheck, included in the calculation of wages or the employee is required to purchase the item at his own expense, and the cost of the item reduces the employee's wage in any workweek below the minimum wage, the expense will be considered a "kickback," and the employer will have violated the FLSA. <u>Id</u>.

any construction by and for the employer; (iii) the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform." Id at (d)(2).

The Second Circuit addressed the issue of whether certain deductions for housing are "primarily for the benefit of the employer," in Soler v. G. & U., Inc., 833 f2d 1104 (2d Cir. 1987). The Court held that board and lodging costs may, in most circumstances, be deducted from the employee's wage under § 3(m) of the FLSA and the regulations. Id. at 1108-10. The Court reasoned that housing and meals are "essential to human existence," and therefore, expenses that are akin to housing and meals will, generally, not be considered to be for the benefit of the employer. Id.

The Second Circuit in Soler, also endorsed the "balancing of benefits" test established by the regulations (29 C.F.R. § 531) to determine whether the cost of "other facilities" may properly be included in the calculation of the employee's wages. Id. at 1109. The balancing of benefits test in the regulation weighs the relative benefit to the employer and the employee of any given item, using a case-by-case, "common sense and logical" approach. Id. The Court left open the possibility that meals and lodging (and other facilities akin to meals and lodging) could be found by the DOL or a court to be primarily for the benefit of the employer, if the employee presented substantial evidence to support such a

15

finding. Id. at 1110.

The Court also addressed the issue of whether and how the interpretations of the applicable FLSA legislation and regulations by the Wage and Hour Division of the DOL should guide a district court in its own interpretation of wage and hour legislation. Id. at 1107-8. The Court held that, "particularly in view of the labyrinthine nature of the congressional and regulatory schemes for the administration of wage and hour legislation, 'an agency's construction of its own regulation is entitled to substantial deference.' Even if a court concludes that its alternative construction of the agency's regulation is 'more equitable' or 'more reasonable,' the agency's interpretations of its regulation is not thereby invalid." Id. at 1108 (internal citations omitted).

In Arriaga (2002), the Eleventh Circuit addressed the specific issue relevant to this case: Whether, under the FLSA, visa, travel and recruiting expenses are required to be reimbursed by an employer of H-2A workers, where such expenses reduce the H-2A workers wages below the applicable minimum wage in the first work-week. 305 F.3d 1228. The Court held that travel expenses from the worker's home country to the United States and the costs associated with obtaining a visa are primarily for the benefit of the employer. See id. at 1241-45. The Court, recognized that the DOL has consistently taken this position, but also engaged in its own independent analysis of the costs, similar to the "balancing of benefits" test endorsed by

16

the Second Circuit. Id. at 1239-45.

The Court reasoned that employers who hire H-2A workers are aware that certain costs are associated with employing foreign workers. Id. at 1242. Further, the Court stated that the regulations and case law consistently draw a line "between those costs arising from the employment itself and those that would arise in the ordinary course of life...." and, "[i]n the list of examples which fall under 'other facilities,' costs that 'primarily benefit the employee' are universally ordinary living expenses that one would incur in the course of life outside the workplace." Id. at 1242-3 (citing 29 C.F.R. § 531.32); see also Soler, 833 f2d 1108-10 (reasoning that lodging and board were primarily for the benefit of the employee, in part, because they were necessary for human existence). The Arriaga Court further reasoned that by participating in the H-2A program, the employers "created the need for these visa costs," which the employee derived little benefit from prior to or following the visa term, which was limited by the terms of employment, as they were obligated to return to their home country upon termination of the work, except under certain limited circumstances. Arriaga, 305 F.3d at 1244.

With respect to the recruitment fees paid by the workers to recruiters in Mexico, the Court applied the common-law principles of agency to determine whether the employer was responsible for the fees charged by the recruiters. Id. at 1244-5. According, to the

17

specific facts of that case, the <u>Arriaga</u> Court concluded that the employer was not responsible for recruitment fees, because there was no evidence to suggest that the employer consented to the fees demanded by the recruiter or that the recruiter acted with apparent authority to charge such fees on behalf of the employer. <u>Id</u>. at 1245. However, the Court left open the possibility that recruitment fees could be reimbursable if they are not considered 'other facilities' under the regulations (i.e. primarily for the benefit of the employee), and if the facts point to the recruiter acting with actual or apparent authority to charge such fees on the employer's behalf. <u>Id</u>.

In August, 2009, the Wage and Hour Division of the DOL issued Bulletin No. 2009-2, in which it described the history of the policy of the DOL with respect to the reimbursement of travel and visa expenses under the temporary foreign labor visa programs.[6] In

---

[6]The Field Assistance Manual discuses the reimbursement of such expenses under the H-2B program, but utilizes case law addressing the same issue under the H-2A program to support its final conclusion that such expenses are reimbursable. See Field Assistance Bulletin No. 2009-2, at 4, note 1. Further, the <u>Arriaga</u> decision, relied upon by the DOL in Bulletin No. 2009-2, was decided in the H-2A context, but has also been specifically applied in the H-2B context. <u>See</u> <u>e.g.</u>, <u>Morante-Navarro v. T&Y Pine Straw, Inc.</u>, 350 F.3d 1163 (11th Cir. 2003), <u>Rivera v. Brickman Group, Ltd.</u>, 2008 WL 81570 (E.D. Pa. 2008); <u>See also</u> <u>Decatur Hotels</u>, 622 F.3d at 419-20 (dissenting opinion) (disagreeing with the majority's decision to decline to follow <u>Arriaga</u>, in part, because it was decided in the context of the H-2A program because, "there is no reasoned basis on which to distinguish between the H-2A and H-2B workers," for the purpose of determining whether they received the minimum wage or whether part of their wages were kickbacks under the applicable wage laws); <u>see also</u> 74 Fed. Reg. 13261. This Court agrees that the differences between the H-2A and H-2B programs are not sufficiently related to this issue to justify the rejection of analogous interpretations of the applicable wage laws based on the H-2B program. This is true, particularly, because the relevant analysis involves the categorization of

Bulletin 2009-2, the DOL explains that from 1960-1994, the DOL consistently took the position that the expenses at issue were primarily for the benefit of the employer. See Bulletin 2009-2 at 3. In a 1994 letter, then DOL Secretary Robert D. Reich noted this longstanding position, but stated that the DOL was in the process of studying the issue to determine whether further guidance or rulemaking was necessary. Id. The letter also stated that, "pending resolution of the policy and procedural issues relating to the treatment of [migrant worker] transportation expenses, we are not prepared to assert violations in this area under the FLSA." Id. In subsequent opinion letters, however, the DOL reaffirmed its longstanding view. Id. at 4.

However, in December 2008, six years after the Eleventh Circuit's decision in Arriaga, the DOL rejected the holding in Arriaga for both H2-A and H-2B employees, and found that such expenses are primarily for the benefit of the employee. See 73 Fed. Reg. 78020, 78039-41 (December 19, 2008)(H-2B); 73 Fed Reg. 77110, 77148-52 (December 18, 2008)(H-2A). Just over ninety days later, the DOL withdrew this interpretation, stating that the DOL had failed to seek public comment prior to its issuance, and that the DOL was continuing to examine the issue. See 74 Fed. Reg. 13261

_____

certain expenses as primarily for the benefit of the employer or employee, and this analysis is not altered by the fact that Congress chose to distinguish between two types of temporary foreign workers (agricultural H-2A workers or nonagricultural, nonprofessional H-2B workers).

(March 26, 2009).

Then, in August 2009, the DOL issued Bulletin No. 2009-2, which states that, "Wage and Hour has now completed its review of this issue in the context of the H-2B visa program. We have concluded that our longstanding interpretation is correct." See Bulletin No. 2009-2 at 6-7. The DOL, citing the Second Circuit's decision in Soler, employed a balancing of benefits test and determined that the benefits to the employer of bringing temporary workers into the United States (and the pre-employment costs associated with the process of recruiting, transporting and ensuring that the workers have a visa) were greater than the benefit of temporary work in the United States to the employee. Id. at 8-9.  The DOL cited Arriaga in reasoning that such expenses are not "ordinary living expenses," which are the types of expenses generally considered to be primarily for the benefit of the employee (for example, food and housing). Id. at 9.  Rather, "such travel and visa costs 'are an inevitable and inescapable consequence' of having foreign workers employed in the United States, and these costs arise out of the employment of such workers." Id. (citing Arriaga, 305 F.3d at 1242, 1244).  The DOL also specifically disavowed their previous finding, which again, lasted only ninety days, that the Arriaga Court wrongly interpreted §3(m) of the FLSA and the applicable regulations.

Recently, the Fifth Circuit, sitting en banc, addressed the issue of whether pre-employment travel, visa and recruitment fees

were reimbursable under the FLSA for H-2B employees. See Decatur
Hotels, 622 F.3d 393.   The Fifth Circuit, in an 8-6 decision,
declined to follow the Eleventh Circuit's reasoning in Arriaga,
finding that the decision was inapplicable because it was based on
H-2A workers. Id. at 403.   Further, the Court found that the DOL
interpretations of § 3(m) of the FLSA and the corresponding
regulations were not entitled to deference, because Bulletin 2009-2
was issued after the events in question and the Court did not find
the DOL's interpretation of the issue to be historically consistent.
Id. at 400-3.   Accordingly, citing a lack a definitive law in the
area and the fact that the Court did not find visa, travel and
recruitment expenses to be similar to "tools of the trade" (one of
the examples in the regulations of an expense that is primarily for
the benefit of the employer), the Court held that such expenses were
not kickbacks under the FLSA. Id.

The dissenting opinion in Decatur Hotels, argued that the
majority erred in (1) failing to accord deference to the DOL's
longstanding interpretation (save 90 days) of § 3(m) of the FLSA and
the regulations; (2) failing to follow the Eleventh Circuit's well
reasoned opinion in Arriaga simply because it was based on H-2A
workers; and (3) failing to recognize that visa, travel and
recruitment expenses (in certain circumstances) are primarily for
the benefit of the employer. See Decatur Hotels, 622 F.3d at 405-
426.

Quoting the Supreme Court's decision in Long Island Care at Home, Ltd. v Coke, 551 U.S. 158 (2007), the Dissent argued that "the DOL's interpretations of its own regulations are controlling unless plainly erroneous or inconsistent with the regulations being interpreted....even when the interpretation is contained in documents drafted after the case at bar was filed." 622 F.3d at 408, 416. Further, the Dissent argued, the DOL's interpretation of the instant issue has been consistent for nearly 50 years, save a 90 day period in 2008, and that interpretation has been that such fees are required to be reimbursed under the FLSA. Id. at 409-10. The Dissent also argued that Arriaga should be, and has been, applied in the case of H-2B workers. See id. at 419-20; see also supra Note 6. Lastly, the Dissent argued that the correct analysis, as illustrated in the DOL interpretations and the Arriaga decision, is whether the expense is an expense of ordinary living. Id. at 419. If so, the expense is generally considered primarily for the benefit of the employee. Id.

Most recently, this District addressed this issued in the context of H-2B employees. See Teoba v. Trugreen Landcare LLC, 2011 WL 573572 (W.D.N.Y. 2011)(Siragusa, J.). In Teoba, the Court, also citing the Supreme Court in Long Island Care, found that the DOL's longstanding interpretation is entitled to substantial deference, and that the reasoning in both the Arriaga decision and the Decatur Hotels Dissenting Opinion were persuasive. Id. at *9 ("In the

22

instant case, the Court is persuaded by the reasoning of <u>Arriaga</u>, Bulletin 2009-2, and the dissent in [<u>Decatur Hotels</u>], and respectfully disagrees with the reasoning expressed by the Fifth Circuit majority. Based on the careful and thorough analysis in <u>Arriaga</u>, Bulletin 2009-2, and the [<u>Decatur Hotels</u>] dissent, this Court determines that visa and transportation costs of H-2B employees are unique costs of doing business, primarily benefitting employers, which cannot be passed on to employees either directly or indirectly, if doing so would reduce the employees' wages below minimum wage.").

This Court finds that the DOL's interpretation of its own regulations is entitled to substantial deference pursuant to the Supreme Court's Decision in <u>Long Island Care</u>, 551 U.S. 158 (2007) and the Second Circuit's decision in <u>Soler</u>, which specifically endorsed the DOL Wage and Hour Division's interpretations of the regulations at issue in this case, albeit with respect to deductions for housing costs. 833 F.2d 1108-9.  Accordingly, this Court finds that Bulletin 2009-2 is entitled to substantial deference.  The Court's decision is supported by the fact that Bulletin 2009-2 represents the DOL's longstanding interpretation of the characterization of travel and visa expenses.

Defendants argue that this Court should instead give deference to the DOL's December 2008 interpretation, which was withdrawn within 90 days because it had not been subject to public comment.

See Defendants' Brief at 19 (Docket #17-5). However, the DOL's longstanding interpretation of the regulations, as demonstrated in the regulations and in their informal letter rulings, amicus briefings and the like, for nearly fifty years, does not comport to the December 2008 interpretation, and the DOL itself admits this fact in Bulletin 2009-2 in its explanation of why the December 2008 interpretation was promptly withdrawn. See also Long Island Care, 551 U.S. at 170-1 (finding that changes in administrative interpretations over time do not alone provide justification for disregarding the current interpretation). Further, this Court finds that Bulletin 2009-2 is also consistent with the Second Circuit's opinion in Soler, in that, after utilizing a balancing of benefits test, the DOL finds that the travel and visa expenses of H-2 workers are not ordinary living expenses and therefore, they are not the kinds of expenses that are typically considered "other expenses" under the regulation. See Soler, 833 F.2d at 1109 ("It seems evident that § 531.3(d)(1) was promulgated to provide guidance for the identification of items that may be considered to be in pari materia with "board and lodging") (emphasis added).

Accordingly, applying the Second Circuit's balancing of benefits test, and the reasoning contained in the DOL's interpretations of § 3(m) of the FLSA and the regulations, this Court finds that pre-employment travel and visa expenses are primarily for the benefit of the employer, and therefore, must be

24

reimbursed to the extent that such expenses reduce an employee's wages in the first workweek below the minimum wage.

This Court also finds that the reasoning in the Eleventh Circuit's decision in <u>Arriaga</u> and the Dissent in the Fifth Circuit's decision in <u>Decatur Hotels</u> are persuasive on this issue. Specifically, because the Second Circuit has stated that "other facilities," will be *pari materia* to expenses such as board and lodging, it is a logical extension to find, as the DOL, the <u>Arriaga</u> Court and the Dissent in <u>Decatur Hotels</u> found, that expenses that primarily benefit the employee will be ordinary living expenses. Further, expenses that are created by the employer because of the nature of the employer's business, or expenses which the employer brings upon himself by the way he chooses to conduct his business, are primarily for the benefit of the employer. In this case, Fowler chose to hire H-2A workers and therefore brought upon itself the costs associated with hiring foreign workers, specifically, long-distance transportation and visa costs. Further, such costs are not generally associated with the costs of ordinary life.

Further, this Court finds that recruitment fees are primarily for the benefit of the employer, where the employee has no choice but to pay the fee in order to gain access to the opportunity. <u>See Rivera v. Brickman Group Ltd.</u>, 2008 WL 81570 (E.D. Pa. 2008). An employer's use of a recruiter to find workers to fill positions in the United States, for which it has been unable to fill with workers

25

within the United States, and the employer's use of recruiters to ensure that the visa application process is completed properly for such workers, demonstrates that the employer is the primary beneficiary of the recruiter's efforts, because the employer created the need for the employee to utilize the recruiter. Additionally, recruitment fees are not the type of fees which have been found by this Circuit and others to be "other facilities" (i.e. primarily for the benefit of the employee) as they are not *in pari materia* with board and lodging.

This Court recognizes that in certain circumstances recruitment fees may primarily benefit of the employee.  For instance, where the employer had little to no contact with the recruiter or where the recruiter, on behalf of the employee, first contacted the employer about the particular job opportunity, without a prior relationship with the employer. However, even in this situation, any visa-related costs paid to the recruiter after having secured a position with a U.S. employer would continue to primarily benefit the employer. Accordingly, this issue is necessarily highly factual.

Plaintiff in this case argues that he is entitled to be reimbursed for the entire amount paid to Nava Piña (roughly $500 in both 2008 and 2009), to the extent the amount reduces his first week's wages below $9.70 per hour. Defendants contend that Plaintiff is not entitled to be reimbursed for any additional visa, transportation or recruitment costs, as he was paid the applicable

26

minimum wage.  To support this contention, Defendants argue (1) that the Second Circuit's opinion in <u>Soler</u> and the DOL's December 2008 interpretation of the applicable regulations support their view that Plaintiff's pre-employment travel, visa and recruitment expenses are <u>not</u> kickbacks; (2) that they are entitled to credit the amount they spent on Plaintiff's inbound transportation and meal reimbursements; and (3) that the costs associated with obtaining the visa, including costs paid to the United States Government and costs associated with traveling to the location Plaintiff obtained the visa in Mexico are <u>not</u> kickbacks.

As set forth above, this Court finds most of Defendants arguments untenable.  First, this Court has found that the balancing of benefits test endorsed by the <u>Soler</u> decision and the Court's reasoning regarding the character of items which are considered primarily for the benefit of the employee supports Plaintiff's position that travel and visa fees are required to be reimbursed under § 3(m) of the FLSA.  Further, as these fees are required to be reimbursed, Defendants are not entitled to a wage credit for the costs associated with Plaintiff's inbound transportation or the costs associated with obtaining a visa.

However, the costs associated with Plaintiff's meals and lodging, in either Mexico or the United States, are, according to the Second Circuit's decision in <u>Soler</u>, primarily for the benefit of the employee, as they are costs of ordinary living that the

27

employee would be expected to pay regardless of his employment by
Defendants.    Accordingly,    such    costs    may    not    be    considered
kickbacks,   and   Defendants   are   entitled   to   count   the   meal
reimbursements in its minimum wage calculation.

It is clear to this Court that some of the fees paid to Nava
Piña were directly for the cost of obtaining a visa.  However,
Plaintiff paid Nava Piña an additional amount for her services.  The
exact nature and character of these amounts in unclear from the
declarations   submitted   to   the   Court,   and   the   declarations   also
contain conflicting information regarding the actual amount paid to
Nava Piña in 2008.   The Court finds that the declarations and
affidavits submitted in connection with this motion are insufficient
for this Court to determine whether the fees paid for Nava Piña's
services   are   primarily   for   Plaintiff's   or   Defendants'   benefit,
because, as discussed *supra*, this inquiry is highly factual.

Plaintiff has submitted an affidavit pursuant to Rule 56(d)
seeking discovery regarding the nature of Defendants' relationship
with Nava Piña and the fees paid to Nava Piña for her services, as
Defendants filed this motion prior to engaging in discovery and have
been unwilling to engage in discovery until this Court rendered its
decision on the instant Motion for Summary Judgement. (Docket #21.)
This Court agrees that further discovery is necessary to determine
whether the entirety of the fee paid to Nava Piña is reimbursable
according to the principles set forth above.   Accordingly, this

28

Court denies Defendants' Motion for Summary Judgement with respect to Plaintiff's FLSA claim.

B.   <u>State Law Claims</u>

Defendants also move for summary judgment on Plaintiff's state law claims, arguing that Plaintiff was paid the minimum wage under the New York Labor Law and New York's Minimum Wage Order for Farmworkers, as <u>pre-employment</u> expenses are not required to be reimbursed under New York Law. Def. Brief at 32 (Docket #17-5.) Defendants, however, have not cited any authority to support their contention that pre-employment kickbacks should be treated differently than kickbacks incurred after beginning employment. Additionally, the New York anti-kickback statute states, specifically, that it is a violation of that provision to "receive [a kickback], <u>either before or after</u> such employee is engaged." N.Y. Lab. Law §198-b(2).

Further, the New York Court of Appeals has stated that the New York Labor law is meant to "prohibit wage deductions by indirect means where direct deduction would violate the statute." <u>See</u> <u>Angello</u> <u>v. Labor Ready, Inc</u>., 7 N.Y.3d 579, 585 (2006).  It follows, therefore, that an employer may not require an employee to bear an expense, whether prior or subsequent to his actual starting date, that is primarily for the employer's benefit and therefore, in violation of the statute.  Accordingly, as the parties have not cited New York State law to the contrary, this Court declines to

29

distinguish between pre-employment kickbacks and those that occur while the employee is actually performing work for the employer. Further, Courts in this Circuit have generally supported the consistent interpretation of analogous FLSA and New York Labor Law provisions, particularly where the parties have not cited case-law to the contrary. See e.g. Bennett v. Progressive Corp., 225 F.Supp.2d 190 (N.D.N.Y. 2002); Topo v. Dhir, 2004 WL 527051, *3 (S.D.N.Y.); Lopez v. Silverman, 147 F.Supp.2d 405, note 4 (S.D.N.Y. 1998).

As discussed above, the parties have yet to conduct discovery and fact issues remain with respect to the payments paid to Nava Piña and the character of those payments. Accordingly, Plaintiff's Motion for Summary Judgment is denied with respect to Plaintiff's state law claims.

C.   Contract Claim

Plaintiff contends that his 2008 and 2009 H-2A work contracts guaranteed him a wage of $9.70 per hour. He further alleges that he did not receive this wage during the first work week because of the $500 he paid to Nava Piña prior to beginning work for Fowler. See Pl. Mem. at 24 (Docket #22.) Defendants argue that Plaintiff cannot assert this cause of action because (1) "Plaintiff has incorrectly attempted to import his FLSA theory into the H-2A regulations," and (2) Defendants paid Plaintiff $9.70 per hour during the first work week.

With respect to Defendants' first argument, they contend that, under the contract and H-2A regulations, they are only required to reimburse the Plaintiff for transportation and subsistence expenses "at or before the 50% point in the contract," as is required under the H-2A regulations. <u>See</u> Def. Brief at 34 (Docket #17-5). However, Item #12 of Plaintiff's contract in both 2008 and 2009 states that they will "reimburse the worker [for such expenses] so that the workers weekly pay is not diminished below the applicable Federal minimum wage required by Section 6 of the [FLSA]." (Docket #1-5, 1-6). According to the plain meaning of this phrase, the contract itself imports the requirements of the FLSA into the contract terms, requiring the reimbursement of certain expenses within the first work week. Accordingly, this Court finds Defendants' first argument to be without merit.

Further, this Court has already determined that fact issues remain with respect to whether Plaintiff was actually paid the applicable minimum wage in the first work week. Therefore, Defendants' Motion for Summary Judgment is denied with respect to Plaintiff's contract claim.

## CONCLUSION

For the reasons set forth above, this Court finds that Plaintiff's pre-employment travel and visa expenses are required to be reimbursed under the FLSA, to the extent that they reduced his wages in the first work week below the applicable minimum wage.

FURTHER, that fact issues remain with respect to whether the full amount of the recruitment fees paid to Nava Piña is required to be reimbursed, and whether Plaintiff was paid the applicable minimum wage under the FLSA, New York State law and Plaintiff's H-2A contract, and, accordingly, Defendants' Motion for Summary Judgment is denied.

FURTHER, that Defendants' Motion to Dismiss Plaintiff's claim for declaratory relief is denied.

FURTHER, that Defendants' Motion to Dismiss Plaintiff's claims for 2006, 2007 and 2010 is denied.

FURTHER, that Defendants' Motion to Dismiss Plaintiff's claims for the years 2003, 2004 and 2005 is granted.

In a separate Order, this Court has referred this case to Magistrate Judge Jonathan W. Feldman, pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B), for all pre-trial matters including the hearing and disposition of all non-dispositive motions or applications, including Plaintiff's pending Motion to Issue Notice of this Action to Similarly Situated Employees (Docket #15).

**ALL OF THE ABOVE IS SO ORDERED.**

S/ Michael A. Telesca

_____
      MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         March 15, 2011

32